THOMPSON, Presiding Judge.
The Alabama State Board of Pharmacy ("the board") petitions this court for a writ of mandamus directing the Montgomery Circuit Court ("the circuit court") to vacate its "order supplementing stay on a temporary basis" ("the supplemental order") entered on January 5, 2017.[1] The supplemental order added certain requirements to a stay order ("the stay order") entered by the circuit court on December 1, 2016, that, among other things, put in place specific restrictions on Demetrius Yvonne Parks's ability to practice pharmacy pending judicial review of the board's decision to suspend her license to practice pharmacy ("the license"). The stay order also directed a pharmacy owned by Parks to meet specific requirements during the pendency of the judicial review.
The materials before this court indicate the following. On October 1, 2016, after a hearing on 46 counts alleging various improper practices, the board entered an order suspending Parks's license for 5 years and levying an administrative fine against her in the amount of $27,000. The board also placed the pharmacy permits of two of Parks's pharmacies-Parks Pharmacy #2 and Parks Pharmacy #4-on probation for five years. Those two pharmacies, as well as one other pharmacy Parks owned (hereinafter referred to collectively as "the pharmacies"), were also ordered to pay administrative fines.[2]
On November 22, 2016, Parks and the pharmacies filed a complaint in the circuit court seeking judicial review of the board's *596 decision. That same day, they also filed a motion to stay the board's decision pending the outcome of the judicial review. A hearing on the stay motion was scheduled for November 30, 2016. On November 28, 2016, two days before the scheduled hearing, Parks and the pharmacies filed an emergency motion to stay. Two affidavits were submitted in support of that motion-one from Parks and the other from Adam Andrews. In her affidavit, Parks testified that the suspension of her license was causing her "irreparable harm" because, she said, medical suppliers, including her "main supplier," were unwilling to provide supplies to her pharmacies. She noted that the permits for two of her pharmacies were not suspended but were only on probation. However, she said, "the personal suspension of me taints and sullies my pharmacies and is making it extremely difficult, if not impossible, for my pharmacies to continue in business so long as I am suspended."
In his affidavit, Andrews stated that he was a party to a telephone conversation with Parks's attorney, Julian McPhillips, and the attorney representing Parks's primary medical supplier. Andrews's relationship to Parks or the pharmacies is not made clear in the affidavit. However, he states that McPhillips and he "were pitching to" the supplier that, despite Parks's license being suspended, the pharmacies were still authorized to do business and were open to the public even though two of them were "on probationary status." Andrews said that, during the telephone conversation, he heard the attorney for the supplier say that even though the pharmacies were still allowed to do business, the supplier, "pursuant to its contract with [the pharmacies], was electing not to continue selling supplies [to] Ms. Parks' pharmacies." Andrews also said that the supplier's attorney said "that it looks bad" for the supplier to sell to the pharmacies because the owner, Parks, was suspended.
A transcript of the hearing on the stay motion is not contained in the materials before this court. On December 1, 2016, the circuit court entered an order staying the suspension of Parks's license subject to her compliance with specific enumerated terms, including that Parks "shall not be involved in the dispensing of legend or controlled drugs." Parks Pharmacy #4 was also directed to hire a supervising pharmacist, who had to be approved by the board, and to make certain records available to the board upon its request.
On December 14, 2016, two weeks after the stay order was entered, Parks and the pharmacies filed an "emergency supplemental motion to stay" in which they sought the removal of language from a Web site of the National Practitioner Data Bank ("the NPDB") relating "to the original suspension, now stayed." According to a document from the United States Department of Health and Human Services, which is included in the materials before this court, the NPDB "is a confidential information clearinghouse created by Congress to improve health care quality, protect the public, and reduce health care fraud and abuse in the U.S." The specific language that Parks and the pharmacies complained of from the Web site was not set forth in the motion. However, Parks and the pharmacies alleged that, because of the unspecified language, Parks's participation as an Alabama Medicaid provider had been revoked and medical suppliers were refusing to sell to them. Parks and the pharmacies sought a hearing "on an emergency basis" and asked the circuit court to "enter a corrected [stay] order that applies to the NPDB website."
The hearing on the December 14, 2016, motion was originally scheduled for December 27, 2016. On December 27, 2016, *597 the circuit court entered an order resetting the hearing for January 5, 2017. On January 3, 2017, the circuit court entered another order granting the board's motion to continue the scheduled January 5, 2017, hearing. The order stated that the hearing "will be reset." We note that the board's motion to continue is not contained in the materials before this court.
Although the circuit court had continued the January 5, 2017, hearing, it also entered an order that day supplementing the stay "on a temporary basis." In the supplemental order, the circuit court stated that,
"because this matter had to [be] continued for various reasons, and deeming the relief requested to be in order, [the stay order] is hereby modified as follows ...
"1. [Parks], whose suspension was lifted by this court's order of December 1, 2016, is hereby allowed to work as a pharmacist until further order of this court.
"2. [The board] is hereby ORDERED to immediately clear and remove all language in its entirety sent to the [NPDB] concerning [the pharmacies] and [Parks] herself."
In the supplemental order, the circuit court scheduled a status conference for February 15, 2017.
It is from the supplemental order that the board filed its petition for a writ of mandamus. See note 1, supra. In addition, on January 9, 2016, the board filed in the circuit court a motion to reconsider the supplemental order or for a stay of that order. In the motion, the board stated that its attorney had had "rather serious lumbar surgery" scheduled for December 20, 2016, necessitating a continuance of the December 27, 2016, hearing on the supplemental emergency motion for a stay. Because the attorney was still recovering from the surgery, on December 30, 2016, the board requested a second continuance of the hearing, which had been rescheduled for January 5, 2017. As mentioned, the circuit court granted that request, adding that the hearing would be "reset."
In its motion to reconsider the supplemental order, the board argued that the circuit court had entered that order without giving the board an opportunity to be heard and without any evidentiary support from any of the parties. It also argued that the supplemental order directing the board to have language removed from the NPDB Web site violated federal law governing the reporting requirements the board must follow. On January 18, 2017, the board filed a supplement to its motion to reconsider, pointing out that it is a member of the National Association of Boards of Pharmacy and that it had utilized that association for its "mandatory and required reporting of disciplinary actions" to the NPDB.
Four months have passed since the board filed its motion to reconsider. The circuit court has not ruled on that motion, and the record does not indicate that the status conference scheduled for February 15, 2017, was held. Thus, the supplemental order remains in effect.
In its petition for a writ of mandamus, the board raises the same issues it presented to the circuit court in seeking reconsideration of the supplemental order. A petition for a writ of mandamus is the proper vehicle for seeking review of an order staying the suspension of a professional license pending the judicial review of the licensing agency's decision. See Ex parte Alabama Dep't of Mental Health, 207 So.3d 743, 753 (Ala. Civ. App. 2016) ; Ex parte Medical Licensure Comm'n of Alabama, 13 So.3d 397, 401 (Ala. Civ. App. 2008).
*598 "In Ex parte Davis, 930 So.2d 497, 499 (Ala. 2005), our supreme court stated:
" 'The writ of mandamus is an extraordinary legal remedy. Ex parte Mobile Fixture & Equip. Co., 630 So.2d 358, 360 (Ala. 1993). Therefore, [an appellate] Court will not grant mandamus relief unless the petitioner shows: (1) a clear legal right to the order sought; (2) an imperative duty upon the trial court to perform, accompanied by its refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the Court. See Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002).'
" ' "Mandamus is an extraordinary remedy and will lie to compel the exercise of discretion, but not to compel its exercise in a particular manner except where there is an abuse of discretion." ' Ex parte Showers, 812 So.2d 277, 281 (Ala. 2001) (quoting State v. Cannon, 369 So.2d 32, 33 (Ala. 1979) )."
Ex parte J.N.M., 187 So.3d 1156, 1159 (Ala. Civ. App. 2015).
In its petition, the board specifically argues that, pursuant to the Alabama Administrative Procedure Act ("the AAPA"), § 41-22-1 et seq., Ala. Code 1975, the circuit court was required to allow it to present evidence in connection with Parks's request for a change in conditions related to the stay. Judicial review of final decisions by the board is governed generally by § 41-22-20, Ala. Code 1975, a part of the AAPA. See Jones v. Alabama State Bd. of Pharmacy, 624 So.2d 613, 614-15 (Ala. Civ. App. 1993) ; § 34-23-94, Ala. Code 1975. Section 41-22-20(c) addresses the procedure for considering the suspension or revocation of licenses issued by state agencies pending judicial review. That statute provides, in pertinent part:
"The filing of the notice of appeal ... does not itself stay enforcement of the agency decision. If the agency decision has the effect of suspending or revoking a license, a stay or supersedeas shall be granted as a matter of right upon such conditions as are reasonable, unless the reviewing court, upon petition of the agency, determines that a stay or supersedeas would constitute a probable danger to the public health, safety, or welfare."
(Emphasis added.)
In Ex parte Medical Licensure Commission of Alabama, 13 So.3d at 401, this court wrote:
"Pursuant to § 41-22-20(c), there is an implied presumption that staying a license revocation will not jeopardize the public health, safety, or welfare. If the agency seeks to prevent the issuance of a stay, it must rebut that presumption by establishing that a stay would 'constitute a probable danger to the public health, safety, or welfare.' "
In this case, the board contends that, in entering the supplemental order without first giving the board an opportunity to be heard on the "supplemental" requirements the circuit court added to the stay order, the circuit court deprived it of the opportunity to rebut the presumption that allowing Parks to work as a pharmacist would not constitute a probable danger to the public health, safety, or welfare and to address the NPDB's reporting requirements. Key among the board's arguments is that the circuit court exceeded its authority in ordering the board to delete reports that the board says federal law requires.
In the supplemental order, the circuit court appears to have removed the condition that Parks was not permitted to dispense legend or controlled substances and directs the board to remove language from the NPDB Web site. When the circuit *599 court made those substantive changes to the stay order, it did so without allowing the board to present evidence to support its position. Moreover, at the time the circuit court entered the supplemental order, Parks had presented no evidence to support her claim that she was entitled to additional protections other than those put in place by the stay order.
In her response to the petition for a writ of mandamus, Parks contends that neither the board nor its attorney "bothered to show up" at hearings on the motion that led to the entry of the supplemental order. She also states: "[G]iven the court's full warning to [the board] in advance, and given the [board's] blatant and continued refusal to show up for emergency hearings, bordering on contempt, the [circuit court] properly issued" the supplemental order. Parks also notes that the circuit court set the matter for a status conference and that, "[t]hus, [the board] was accorded a perfect opportunity to challenge the supplemental [order]."
Parks's characterizations and comments are wholly unsupported by the materials before this court. Nothing in the materials suggests any impropriety in the board's requests for continuances, which the circuit court granted. There is also nothing to suggest that the circuit court threatened the board with contempt. Furthermore, the materials do not reflect that a status conference was actually held on February 15, 2017, and no order on the board's motion to reconsider the entry of the supplemental order has been issued by the circuit court, which would indicate that it had taken the board's arguments into consideration.
Section 41-22-20(c) provides that the board have an opportunity to present evidence to challenge the presumption that a stay, or the conditions placed on a stay, is proper. In entering the supplemental order that essentially removed the conditions on Parks's ability to practice pharmacy, which had been included in the stay order, without first giving the board the opportunity to challenge the relief Parks sought, the circuit court erred. Furthermore, the circuit court did not allow the board to present evidence or arguments regarding the propriety of its decision to direct the board to delete language from the federal NPDB Web site. Thus far, the circuit court has not fulfilled its obligation to allow the board to present its case against the terms Parks requested in her motion seeking the supplemental order. Accordingly, we grant the board's petition for a writ of mandamus and direct the circuit court to vacate the supplemental order. We further direct the circuit court to hold a hearing so that the parties can present their evidence and arguments regarding the relief Parks has requested in her emergency supplemental motion for a stay.
PETITION GRANTED; WRIT ISSUED.
Pittman, J., concurs.
Donaldson, J., concurs in the result, without writing.
Moore, J., dissents, with writing, which Thomas, J., joins.

The board filed a notice of appeal of the supplemental order within 14 days of the entry of that order, believing it to be appealable because it was injunctive in nature. See Rule 4(a)(1)(A), Ala. R. App. P. On February 15, 2017, Demetrius Yvonne Parks filed in this court a motion to dismiss the appeal. On February 23, 2017, this court entered an order treating the appeal as a petition for a writ of mandamus and denying Parks's motion to dismiss.

The board took disciplinary action against another pharmacist in connection with this matter. That pharmacist is not involved in the appeal to the circuit court.